# Davis Miles
## McGuire Gardner

40 E. Rio Salado Pkwy., Suite 425
Tempe, AZ 85281
Telephone: (480) 733-6800
Fax: (480) 733-3748
efile.dockets@davismiles.com

Pernell W. McGuire – SBN 015909
Aubrey Thomas – SBN 029446
*Attorneys for Debtor*

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| In re: | In Chapter 11 Proceedings |
|---|---|
| TENKORIS, LLC | Case No.: 2:16-bk-07290-BKM |
| Debtor. | **DISCLOSURE STATEMENT DATED MARCH 1, 2017** |

I.     INTRODUCTION TO DISCLOSURE STATEMENT

    1.1     Purpose of This Disclosure Statement.

    This Disclosure Statement has been conditionally approved by order of the Bankruptcy Court, dated _____, as containing information of a kind and in sufficient detail to enable a hypothetical reasonable investor typical of the holders of claims against or interests in the debtor to make an informed judgment about Debtor's Plan. The Court's approval of this Disclosure Statement, however, does not constitute a recommendation by the Bankruptcy Court either for or against the Plan. The purpose of this Disclosure Statement is to provide the holders of claims against Debtor with adequate information about Debtor and the Plan to make an informed judgment about the merits of approving the Plan.

1.2   Debtor's Plan.

**DEBTOR'S PLAN ACCOMPANIES THIS DISCLOSURE STATEMENT AS EXHIBIT A.  THE READER IS URGED TO REVIEW DEBTOR'S PLAN CAREFULLY IN CONJUNCTION WITH THIS DISCLOSURE STATEMENT.  IF THERE IS ANY CONFLICT BETWEEN THE PROVISIONS OF THIS DISCLOSURE STATEMENT AND THOSE OF DEBTOR'S PLAN, THE PROVISIONS OF THE PLAN SHALL CONTROL.**

1.3   The Voting Process and Deadline.

A ballot accompanies this Disclosure Statement for use in voting on Debtor's Plan.  **To vote to accept or to reject the Plan, creditors and interest holders of Debtor in any of the impaired classes should indicate their acceptance or rejection of the Plan and otherwise complete the Ballot which pertains to the Plan.**  See the "Summary of Plan" contained herein and the Classification and Treatment of Claims and Interests" contained in the copy of the Plan attached hereto to determine whether you are a member of an impaired class.  **Any creditor or equity holder holding claims in more than one impaired class must file separate Ballots for each such class.**  Additional Ballots may be obtained by written request to Debtor's lawyer, Pernell McGuire of Davis Miles McGuire Gardner, PLLC, 40 E. Rio Salado Pkwy., Suite 425, Tempe, AZ 85281. (480) 733-3748.

You are urged to fill in, date, sign, and promptly process your Ballot or Ballots.  **Please be sure to properly complete the form and to legibly identify the name of the claimant or**

2

**interest holder.**  The holders of claims and interests may vote on the Plan by filling out and returning the accompanying Ballot for Accepting or Rejecting Debtor's Plan to:

> Davis Miles McGuire Gardner, PLLC
> Attn: Pernell McGuire
> 40 E. Rio Salado Pkwy., Suite 425
> Tempe, AZ 85281

**SIGNED AND COMPLETED BALLOTS MUST BE RECEIVED AND FILED, NOT MERELY MAILED, ON OR BEFORE 4:00 P.M. ON _____.** SINCE MAIL DELAYS MAY OCCUR, IT IS IMPORTANT THAT THE BALLOT OR BALLOTS BE MAILED OR DELIVERED WELL IN ADVANCE OF THE DATE SPECIFIED.  ANY BALLOTS RECEIVED OR FILED AFTER THAT DATE MAY BE EXCLUDED FROM THE CALCULATION TO DETERMINE WHETHER THE CREDITORS AND INTEREST HOLDERS OF A PARTICULAR CLASS HAVE VOTED TO ACCEPT OR TO REJECT DEBTOR'S PLAN.

    1.4   <u>The Importance of Your Vote</u>

       As a creditor or interest holder your vote is important.  The Plan can be confirmed by the Court if it is accepted by the holders of ***two-thirds in amount*** and more than ***one-half in number*** of claims in each impaired class of claims voting on the Plan, and if it is accepted by the holders of two-thirds in amount of interests in each impaired class of equity interests voting on the Plan.  In the event the requisite acceptances are not obtained, the Court may nevertheless confirm the Plan if the Court finds that it accords fair and equitable treatment to the class or classes rejecting it.

### 1.5    The Confirmation Process

After the votes are tallied, the Court will hold a hearing on the confirmation of the Plan and may enter a Confirmation Order if it finds that the requirements for confirmation have been met.

If the required acceptance of one or more impaired classes of claims or interests is not obtained, § 1129(b)(1) of the Bankruptcy Code nevertheless permits the Bankruptcy Court to confirm the Plan upon request of Debtor, if the Court finds that the Plan does not discriminate unfairly against and accords fair and equitable treatment to the impaired class or classes rejecting it and that the Plan otherwise meets the requirements for confirmation.

At the hearing on confirmation of the Plan, the Bankruptcy Court will hear any timely filed objections from a party in interest to confirmation of the Plan.

### 1.6    Confirmation Hearing

**The Bankruptcy Court has set _____, at _____ o'clock \_\_\_m for a hearing on confirmation of Debtor's Plan.**

### 1.7    Binding Effect of Plan

If the Court confirms the Plan, each creditor will be bound by the terms of and the treatment set forth in the Plan.

## II.    DEFINITIONS

### 2.1    Defined Terms.

In addition to any terms defined elsewhere in the Disclosure Statement or Plan the following terms have the indicated meanings:

Allowed Claim.  A claim that (i) is liquidated and has been scheduled as undisputed, or (ii) for which a proof of claim has been filed that has not been objected to or that has been objected to but has been allowed by the Court.

Allowed Interest.  An interest that (i) has been scheduled as undisputed, or (ii) for which a proof in interest has been filed that has not been objected to or that has been objected to but has been allowed by the Court.

Bankruptcy Code.  Title 11 of the United States Code.

Bankruptcy Court.  The United State Bankruptcy Court for the District of Arizona.

Confirmation Date.  The date on which the Court enters the Confirmation Order.

Confirmation Order.  The order of the Court confirming the Plan.

Debtor.  Tenkoris, LLC.

Distribution.  The cash to be distributed under the Plan to the holder of Allowed Claims and Allowed Interests.

Disbursing Agent.  Debtor, or any other entity designated by Debtor to act in such capacity.

Effective Date.  The first business day following the date upon which the Confirmation Order has become final and non-appealable with no appeal then pending, except that Debtor will have the right to treat this date as having occurred under any circumstances which would moot any such appeal.

Insider.  Any person or entity defined as an insider in Section 101 of the Bankruptcy Code.

Plan.  Debtor's Plan of Reorganization, together with any modifications thereto as may be filed by the proponent of the Plan.

Pro-Rata.  Proportionately so that the ratio of the amount of consideration distributed on account of an Allowed Claim in a particular class to the amount of consideration distributed on all Allowed Claims in the same class, is the same as

5

the ratio of the amount of that Allowed Claim to all Allowed Claims in the same class.

Reorganized Debtor. Debtor following confirmation, as reorganized by this Plan.

2.2    Undefined Terms. A term used but not defined herein, but that is defined in the Bankruptcy Code, has the meaning given to that term in the Bankruptcy Code.

III.    HISTORY AND EVENTS LEADING TO THE CHAPTER 11 FILING

3.1    Events Precipitating this Case.

Debtor is an Arizona limited liability company, of which there is one member, Ken Olcher. Debtor operates a health supplement business. In 2015, Debtor was sued in a wrongful death lawsuit and was threatened with a possible second lawsuit by another party. Debtor settled with both plaintiffs in those matters. That said, Amazon is a co-defendant and has asserted a cross-claim against Debtor for indemnification and breach of contract. Amazon also withheld sale proceeds due to Debtor generated by sales on Amazon.com, making it nearly impossible for Debtor to continue operating. Debtor denies that it has any liability whatsoever to Amazon. Debtor initiated this case because it cannot afford to pay the alleged debt to Amazon and the freezing of its Amazon accounts was crippling the business.

3.2    Actions Taken by Debtor Post-Petition.

Debtor continues to operate its health supplement business. Along with this Disclosure Statement, Debtor has also filed a motion to approve the sale of all of its business assets to Stoddard Capital, LLC. Thus, Debtor's anticipated plan is a liquidation plan in which the proceeds the sale of Debtor's assets will be used to pay the claims in this matter.

6

### 3.3 Litigation.

Debtor is not currently subject to any litigation. Prior to the filing of this case, Debtor was engaged in litigation with Amazon regarding its cross-claim, case number 15CV185837, filed in the Court of Common Please, Lorain County, Ohio. That case was stayed by the filing of this action, and Amazon has not requested stay relief to resume litigation of that matter.

### 3.4 Retention of Professionals.

Debtor has applied for Court approval of employment of the following professionals:

Davis Miles McGuire Gardner, PLLC (the "Firm") has applied to act as the attorney for the estate. A Court order approving the Firm's employment was entered on June 29, 2016.

Debtor has employed Phillip Fitzekam as its accountant. The Court approved Fitzekam's employment by Court order on August 10, 2016.

## IV. FINANCIAL INFORMATION

### 4.1 Assets.

Debtor owns no real property. Debtor has personal property, consisting primarily of business equipment and inventory. Debtor's property is listed in Schedule A/B of its Schedules, a copy of which is attached hereto as **Exhibit "B."** All of Debtor's business assets, except its debtor-in-possession bank account, will be sold in order to fund this Plan. Additionally, in connection with the proposed sale of Debtor's assets, Debtor obtained a broker's opinion of value that details the value of Debtor's assets in the context of a proposed sale. A copy of the valuation report is attached hereto as **Exhibit "C."**

7

4.2    Claims.

Claims against Debtor are set forth in Schedules D, E, and F to Debtor's Schedules a copy of which is attached as **Exhibit "D."**   Debtor provides the following summary of the estimated balances of all allowed claims in this case:

4.2.1   *Secured Claims.*

| Creditor Name | Amount of Claim | Security Interest |
|---|---|---|
| Wells Fargo Equipment Finance | $32,202.90 | Medical laboratory equipment and computer hardware and software used for production of product |
| Wells Fargo Equipment Finance | $43,741.14 | Robert Bosch Capsylon 705 Capsule filling and closing machine |
| Toyota Motor Credit Corporation | $15,288.56 | 2014 FJ 4x4 |

4.2.2   *Priority Unsecured Claims.*  None.

4.2.3   *General Unsecured Claims.*

| Creditor Name | Amount of Allowed Claim |
|---|---|
| IRS | $1,950.00 |
| Ulmer & Berne LLP | $23,957.37 |
| Aiken Schenk Hawkins & Ricciardi | $2,333.79 |
| Green Wave Ingredients | $14,804.06 |
| Phillip Fitzekam | $2,350.00 |
| Uni Chem | $24,705.00 |
| Wells Fargo Bank | $911,904.29 |
| Stoddard Capital, LLC | $806,000.00 |
| Summerland Sales, LLC | $78,000.00 |
| Amazon | Unknown amount/disputed |
| **Total** | **$1,866,004.51** |

8

4.3    <u>Disclaimer as to Amount of Claims</u>.

**FOR PURPOSES OF PLAN COMPUTATION, ALL OBLIGATIONS OF THE VARIOUS CREDITORS LISTED IN THE SCHEDULES AND IN THIS DISCLOSURE STATEMENT AND PLAN SHOULD BE CONSIDERED AS ESTIMATES ONLY AND ALL CLAIMS ARE CONSIDERED DISPUTED AS TO THE AMOUNT UNLESS SUPPORTED BY A TIMELY FILED PROOF OF CLAIM (AND IF OBJECTION THERETO IS FILED BY DEBTOR FOLLOWING RESOLUTION BY THE BANKRUPTCY COURT AS TO AMOUNT OF THE CLAIM), OR IF THE CLAIM HAS BEEN SCHEDULED AS UNDISPUTED, FIXED, AND LIQUIDATED.  ALL CREDITORS' CLAIMS NOT SUPPORTED BY TIMELY FILED PROOF OF CLAIM OR SCHEDULED AS UNDISPUTED, FIXED, AND LIQUIDATED, MAY BE EXCLUDED FROM PLAN COMPUTATIONS AND DISTRIBUTIONS UNDER THE PLAN OR AT DEBTOR'S OPTION, INCLUDED AT THE AMOUNTS OR VALUES LISTED HEREIN.**

V.    <u>SUMMARY OF PLAN</u>

The following description of the plan is for informational purposes only and does not purport to change or supersede any of the specific contractual language of the plan.  THE PLAN IS CONTROLLING IN THE EVENT OF ANY INCONSISTENCY BETWEEN THE CONTENTS OF THE PLAN AND THE CONTENTS OF THIS DISCLOSURE STATEMENT.

5.1    Classification of Claims

The plan divides Claims against Debtor into classes which Debtor believes are in compliance with the Bankruptcy Code. Their classification and treatment are as follows:

5.1.1    Class 1: Administrative Claims. Class 1 claims will consist of all claims which are allowed claims pursuant to Bankruptcy Code §§ 503(b) and 507(a)(1), including, without limitation, the Allowed Claims of Debtor's professionals, any other professionals approved by the Court, any quarterly fees payable to the United States Trustee, and other claims of creditors holding Administrative Claims, including taxes.

5.1.2    Class 2: Secured Claim. Class 2 consists of the Allowed Secured Claim of Wells Fargo Equipment Finance, secured by an interest in Debtor's equipment as further described in **Exhibit E**.

5.1.3    Class 3: Secured Claim. Class 3 consists of the Allowed Secured Claim of Wells Fargo Equipment Finance, secured by an interest in Debtor's equipment as further described in **Exhibit F**.

5.1.4    Class 4: Secured Claim. Class 4 consists of the Allowed Secured Claim of Toyota Motor Credit Corporation, secured by an interest in Debtor's 2014 FJ Cruiser.

5.1.5    Class 5: Unsecured Claims. Class 5 consists of the Allowed Unsecured Claim of Wells Fargo. This is an SBA loan for which another entity, Eva Grace, LLC is the primary obligor. Additionally, the loan is secured by real property titled in the name of Eva Grace, LLC. As such, Wells Fargo has recourse as to that real property and another debtor in

10

order to recover on this claim, thus justifying its separate classification from other unsecured creditors.

     5.1.6   Class 6: Unsecured Claims.  Class 6 consists of Allowed Unsecured Claims.  The following represents the general unsecured creditors, and the amounts of their claims, which Debtor expects to pay as part of Class 6:

| Creditor Name | Amount of Allowed Claim |
|---|---|
| IRS | $1,950.00 |
| Ulmer & Berne LLP | $23,957.37 |
| Aiken Schenk Hawkins & Ricciardi | $2,333.79 |
| Green Wave Ingredients | $14,804.06 |
| Phillip Fitzekam | $2,350.00 |
| Uni Chem | $24,705.00 |
| **Total** | **$70,100.22** |

     5.1.7   Class 7: Unsecured Claims.  Class 7 consists of the Allowed Unsecured Claims of Summerland Sales, LLC and Stoddard Capital, LLC.  These claims are separately classified because both creditors are insiders as that term is defined under the Bankruptcy Code.

     5.1.8   Class 8: Interest of Olcher.  Class 8 consists of the ownership interest of Ken Olcher.

     5.1.9   Impaired Classes.  Classes 2, 3, 4, 5, 6, 7, and 8 are impaired.

    5.2   Operation of Plan and Treatment of Classes.

     The Plan of Reorganization envisioned by Debtor is a liquidating plan.  Debtor intends to sell all assets as proposed in the Sale Motion.  The proceeds will then be utilized to pay the

administrative, secured, and Class 6 claims in full. The remaining proceeds will be distributed *pro rata* to Class 7.

### 5.2.1 Treatment of Class 1

This Class consists of allowed Administrative Claims under §§ 503(b) and 507(a)(2) related to the Debtor. The Allowed Claims of Class 1 shall be paid in full, in cash, by the earlier of the Effective Date or the date that such are allowed and ordered paid by the Court. Pending Court approval, Debtor shall set aside enough funds to pay all administrative claims until Court approval is obtained.

On January 19, 2017, the Court approved Debtor's counsel's First Application for Fees and Costs in the amount of $7,652.50. Those funds were paid in full from funds that counsel held in trust. Counsel currently holds an additional $2,507.50 in trust on behalf of the estate. Currently, Debtor owes its counsel, Davis Miles McGuire Gardner, PLLC (the "Firm"), $5,953.00 in attorneys' fees that have not yet received court approval. Debtor anticipates that it will incur additional attorneys' fees of approximately $14,000.00 through the remainder of this case. Debtor believes that it will have sufficient cash on hand as of the confirmation date to pay all outstanding attorneys' fees and costs in full, after court approval.

### 5.2.2 Treatment of Class 2

Debtor proposes to pay the Class 2 claim holder, Wells Fargo Equipment Finance, the full amount of its secured claim, $32,202.90, with interest at 4.24% interest per annum, in sixty (60) equal monthly payments of $596.56, beginning on the 15th day of the month following

12

the Effective Date of the Plan, and continuing on the 15th of each month thereafter until paid in full. All terms contained in the parties existing loan documents that are not inconsistent with the Plan shall remain in full force and effect. The Class 2 claim holder shall retain its lien on its equipment collateral until all amounts due and owing under the Plan are paid in full.

### 5.2.3   Treatment of Class 3

Debtor proposes to pay the Class 3 claim holder, Wells Fargo Equipment Finance, the full amount of its secured claim, $43,741.14, with interest at 4.31% interest per annum, in sixty (60) equal monthly payments of $811.69, beginning on the 15th day of the month following the Effective Date of the Plan, and continuing on the 15th of each month thereafter until paid in full. All terms contained in the parties existing loan documents that are not inconsistent with the Plan shall remain in full force and effect. The Class 3 claim holder shall retain its lien on its equipment collateral until all amounts due and owing under the Plan are paid in full.

### 5.2.4   Treatment of Class 4

Debtor proposes to pay the Class 4 claim holder the full amount of its claim, $15,288.56, with interest at 5.25% per annum, in 60 equal monthly installments of $290.27, starting the 15th day of the month following the Effective Date of the Plan. All terms contained in the parties existing loan documents that are not inconsistent with the Plan shall

13

remain in full force and effect. The Class 4 claim holder shall retain its lien on Debtor's vehicle collateral until all amounts due and owing under this class are paid in full.

### 5.2.5 Treatment of Class 5

Because Debtor is the secondary obligor to the Class 5 claim holder, Debtor proposes that no distribution be made through the Plan to the Class 5 claim holder on account of its claim. The debt is currently being paid by co-debtor Eva Grace, LLC, and is not in default.

### 5.2.6 Treatment of Class 6

Debtor proposes to pay the Class 6 claim holders in full, with interest at three percent (3%) per annum, in 36 monthly payments of $2,038.60, distributed on a *pro rata* basis, beginning on the 15th day of the month following the Effective Date of the Plan.

### 5.2.7 Treatment of Class 7

Debtor proposes to pay the Class 7 claim holders its Excess Cash Flow, estimated to be $322.77 for month 1 through month 36, and $2,361.37 for month 37 through month 60, to be distributed on a *pro rata* basis, beginning on the 15th day of the month following the Effective Date of the Plan. "Excess Cash Flow" shall mean the monthly note payment received by Debtor ($4,059.89) less all monthly payments due to Classes 1 through 6.

### 5.2.8 Treatment of Class 8

Because this is a liquidation plan, Ken Olcher shall not receive any funds or retain his ownership interest in Debtor, except to the extent necessary for the administration of the payments set forth above.

5.3     The holder of any claim to which an objection has been made prior to or on the date on which the first payment to the holder of such a claim is made, shall not be entitled to receive any distribution otherwise attributable to that claim until the objection has been resolved by order of the Court.  Any distribution which would otherwise accrue to the benefit of the holder of an Allowed Claim prior to resolution of an objection shall be held by Debtor in a segregated account and upon resolution of the objection either paid to the claimholder or returned to the estate, as appropriate, in light of the Court's resolution of the objection.  In the event a claim is reduced voluntarily by the claim holder or by ruling of the Court following objection by the Debtor or any other party in interest, Debtor may, at its option, continue to make payments in the monthly amounts specified in this Disclosure Statement and the Plan of Reorganization until the reduced claim holder has received all amounts to which it is entitled, or alternatively, reduce the monthly amount payable on behalf of the reduced claim (and all claims of the same class) so that the claims are paid within the time specified in the Disclosure Statement and Plan of Reorganization.  This option to decrease the monthly payment but pay for the full term specified in the Plan or maintain the monthly payment and reduce the term over which such payments must be paid, shall be within in the sole discretion of Debtor and the exercise of its reasonable business judgment.

5.4     All undisputed taxes generated by any step of the operation of this Plan, or accruing during the operation of this Plan, will be considered administrative expenses to be

15

satisfied as they accrue.

**DEBTOR BELIEVES THAT THE PLAN DESCRIBED HEREIN PROVIDES THE GREATEST AND EARLIEST POSSIBLE RECOVERIES TO CREDITORS. DEBTOR THEREFORE BELIEVES THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTEREST OF EACH AND EVERY CLASS OF CREDITOR AND INTEREST HOLDER, AND RECOMMENDS THAT EACH CLASS VOTE TO ACCEPT THE PLAN.**

VI.    <u>IMPLEMENTATION OF THE PLAN</u>

6.1    <u>Projection of Operation</u>.  Debtor continues to be engaged in the business of operating a health supplement business.  Debtor will continue to do so until a sale of its assets can be completed in order to provide a smooth transition to the new owner.  As detailed in the Sale Motion filed herewith, Stoddard Capital, LLC will enter into a purchase agreement with Debtor to buy all of its assets for $210,000.00.  Debtor will carry a note for the purchase price in a form similar to note attached hereto as **Exhibit "G."**  The note will be secured by a security interest in all of the assets being sold to Stoddard Capital, LLC.  The payments made to Debtor by Stoddard Capital, LLC in accordance with the note will be utilized to pay the claims as detailed above.

As support for the proposed purchase price, Debtor has obtained a broker's opinion of value which is attached hereto as Exhibit "C."  Additionally, attached hereto as **Exhibit "H"** is

a year-end financial statements for Debtor for 2016.  Debtor anticipates that any cash on hand at the time of the sale will be exhausted by the payment of administrative claims.

A summary of the plan and proposed payments under the plan is attached hereto as **Exhibit "I"** and an estimate of the amounts to be distributed to each general unsecured creditor is attached hereto as **Exhibit "J."**

6.2 <u>Assumptions</u>.  There are a number of other assumptions upon which this Plan is based:

6.2.1 <u>Sufficient Funds</u>.  It is assumed that Debtor has, or will have, sufficient funds on hand on the Effective Date of the Plan to pay the claims as set forth above.

6.2.2. <u>Buyer Payments</u>.  It is assumed that the buyer will timely make its payments pursuant to the note.

6.3 <u>Risk Factors</u>.  Just as in any business, the business in which Debtor is engaged involves certain risks, including the following:

6.3.1 <u>Competition</u>.  There can be no assurance that new competition will not enter the market, with the effect of decreasing the profit margins and/or amount of new business.

6.3.2 <u>Sale Completion</u>.  The proposed Plan is contingent upon consummation of the sale of all of Debtor's assets to Stoddard Capital, LLC.  The motion for approval of the sale is currently before the Court.

*/// /// ///*

17

# VII.   LIQUIDATION ANALYSIS

In order to arrive at a judgment on whether or not to vote for or against the Plan, a creditor or other party in interest needs to have an understanding of the consequences that would be realized if Debtor's estate were liquidated pursuant to Chapter 7 of the Bankruptcy Code. In this case, Debtor has proposed a liquidated plan. However, the liquidation proposed by Debtor will result in a greater recovery to general unsecured creditors for several reasons.

First, Debtor is continuing to operate while Debtor works towards selling its assets. By continuing to operate, Debtor is generating income which can also be distributed to its creditors. Debtor estimates that, once the sale is completed, it will have sufficient funds to pay all administrative claims. If a Chapter 7 liquidation were to occur, there is no guarantee that the business would remain open and generating operational income while a sale was pending.

Second, Debtor has proposed a sale that will involve the sale of all business assets as an intact business. If a Chapter 7 liquidation were to occur, the business assets would likely be sold in a manner that did not involve the buyer continuing operations. Upon information and belief, the business assets are substantially more valuable when sold as a whole as opposed to simply selling the business piece by piece.

Third, Debtor's proposed liquidation avoids the cost of Chapter 7 trustee fees. By saving that cost, Debtor is enhancing the amount of funds that will be available for distribution to its creditors.

In the instant case, it is anticipated if Debtor's estate was liquidated and the assets sold pursuant to a Chapter 7 liquidation, it is likely that Class 6 general unsecured creditors would be paid in full, just as they will be under this proposed plan; the Class 5 unsecured creditor would likely receive no distribution under either Chapter 7 or 11 because the co-debtor, Eva Grace, LLC, has not defaulted on the loan; and the Class 7 claim holders (insiders) would get paid about 2% of their claims, while in a Chapter 11 case, the Class 7 claim holders will receive 8%. Attached hereto as Exhibit "K" is a table showing the various proposed distributions under the Plan versus the distributions in a Chapter 7 scenario.

## VIII.   COMPLIANCE WITH BANKRUPTCY CODE.

In order to confirm the Plan, the Bankruptcy Court must make a series of determinations concerning the Plan, including those set forth, *infra*. Debtor believes that each of these conditions has been met and will seek rulings of the Bankruptcy Court to this effect at the confirmation hearing.

In addition, the Bankruptcy Code also requires that the Plan be accepted by requisite votes of holders of claims and interest. If any member of an impaired class does not accept the Plan, the Bankruptcy Court must find that confirmation of the Plan is in the "best interests" of such entities.

8.1   Classification of Claims and Interest. The Bankruptcy Code requires that a plan of reorganization place each creditor's claim and each holder of an interest in a class with other

claims or interest that are "substantially similar." Debtor believes that the Plan's classification system meets the Bankruptcy Code standard.

8.2    Section 1111(b) Election. Section 1111(b) of the Bankruptcy Code provides that, as a general rule, a secured claim is to be accorded a treatment in the Chapter 11 Plan that is the same as would be received if it were a recourse claim, regardless of whether or not the claim is non-recourse by agreement or applicable law. Section 1111 also provides an opportunity for a partially secured creditor whose claim is treated by the proposed Plan of Reorganization as partially secured and partially unsecured to acquiesce in such bifurcation of their claim or, alternatively, to elect to treat the claim as fully secured. There is no creditor that is partially secured in this case.

8.3    Technical Requirements. To be confirmed, the contents of a plan must comply with the technical requirements of Chapter 11 of the Bankruptcy Code, which Debtor believes has been done.

8.4    Good Faith. To be confirmed the Bankruptcy Court must find that Debtor has proposed the Plan in good faith. In this case, that requirement is met because the Plan contemplates a bona fide reorganization in which the creditors will be paid more than what would be received through conversion to a Chapter 7 proceeding.

8.5    Disclosure. The Bankruptcy Court must find that Debtor's disclosures concerning the Plan have been adequate and have included information concerning all payments made or promised in connection with the Plan and the bankruptcy case, as well as

20

the identity, affiliations, and compensation to be paid to all officers, directors, and other insiders. Debtor believes that that requirement has been met by this Disclosure Statement.

8.6    Feasibility. The Plan may not be confirmed if the Bankruptcy Court finds that confirmation is likely to be followed by the liquidation of the Reorganized Debtor or the need for further financial reorganization. Debtor believes that it will be able to perform its obligations under the Plan and that no further proceedings will be required as the Plan proposed will result in the liquidation of all of Debtor's assets.

8.7    Best Interests. Notwithstanding acceptance of the Plan by creditors and interest holders impaired under the Plan, if a claimant or interest holder does not accept the Plan, then the Bankruptcy Court must independently determine that the Plan is in the best interests of that claimant's or interest holder's class. To meet that test, the Bankruptcy Court must determine that each claim or interest in the impaired class will receive under the Plan, as of the Effective Date, property of a value at least equal to the value that each such holder would receive if Debtor were liquidated under Chapter 7 of the Bankruptcy Code. A liquidation analysis is contained in Section VII of this Plan, from which it can be seen that the foregoing condition is met.

IX.    TAX CONSEQUENCES OF PLAN

In 1978, a massive revision of the bankruptcy laws was enacted as the Bankruptcy Code now in effect. In turn, the impact of the Bankruptcy Code on the existing tax laws led to the enactment of the Bankruptcy Tax Act of 1980, P.L. 96-589, 94 Stat. 3389 (1980). That act

21

made a number of significant changes in the law, relating *inter alia*, to how the bankruptcy estate is taxed, whether the occurrence of the bankruptcy will interrupt Debtor's taxable year, whether income and deductions belong to Debtor or the estate, and whether individual losses are available to the estate.

**CLAIMANTS ARE ADVISED TO CONSULT WITH THEIR TAX ADVISORS CONCERNING THE INDIVIDUAL TAX CONSEQUENCES OF THE TRANSACTIONS CONTEMPLATED IN THIS PLAN, INCLUDING STATE AND LOCAL TAX CONSEQUENCES.**

X.      VOTING/CONFIRMATION/ALTERNATIVES

10.1    Voting.  A creditor may vote either to accept the Plan or to reject the Plan.  Only the votes of impaired classes will be counted in connection with confirmation of the Plan, because classes of claims and interests which are not impaired are deemed to have accepted the Plan.  In determining acceptance of the Plan, votes will be counted only if submitted by a party with an Allowed claim or an Allowed Interest, and the ballot for voting on the Plan does not constitute a proof of claim for this purpose.  A claim to which an objection has been filed is not an Allowed Claim unless and until the Bankruptcy Court has ruled on the objection, and, although holders of disputed claims will receive ballots, those votes will not be counted unless the Bankruptcy Court temporarily allows such claim for purposes of voting on the Plan.

10.2    Confirmation.  In order for the Plan to be approved, it must either (i) be accepted by at least two-third in amount and more than one-half in number of the creditors of each

22

impaired class, or (ii) be approved by the Court as being in the best interest of all parties in spite of failure to receive the required votes of creditors in any particular class (*i.e.* "cramdown").

The Bankruptcy Code defines acceptance of a plan by a class of claims as acceptance by holders of two-thirds in dollar amount and a majority in number of claims of that class, counting only those members of the class who actually vote. The Bankruptcy Code defines acceptance of a plan by a class of interests (equity securities) as acceptance by two-thirds of the number of shares, counting only those shares actually voted.

Classes of claims and interests that are unimpaired under the Plan are conclusively deemed to have accepted the Plan. A class of creditors or interest holders is unimpaired if the Plan (i) does not alter the legal, equitable, or contractual rights between the debtor and the creditor or interest holder (with the exception of reinstating the claim by curing any defaults), or (ii) pays the claimant the full amount of the claim or interest by cash payment on the Effective Date. Classes of claims and interests that receive no distribution under the Plan are deemed to have rejected the Plan. Consequently, ballots are being sent only to those classes which are impaired but are to receive a distribution under the Plan.

The Plan may be confirmed by the Bankruptcy court even if it is not accepted by all classes of impaired claim, as long as at least one impaired class of claims has accepted.

10.3  <u>Alternative To Confirmation</u>. In the event this Plan is not confirmed, the Chapter 11 proceeding can be (i) continued for the submission of other plans, (ii) converted to

Chapter 7, or (iii) dismissed. In the event the Plan is not confirmed through acceptance of the claimholders, it is Debtor's intention to seek confirmation through cram-down.

XI.   INFORMATION/REPRESENTATIONS

    11.1   <u>Source of Information</u>.  Unless otherwise stated, all of the information contained herein is based on information supplied by Debtor or its agents, and no representations concerning Debtor are authorized by Debtor other than as set forth in this Disclosure Statement.

    11.2   <u>Conflicts</u>.  To the extent any information set forth in this Disclosure Statement conflicts with any information set forth in Debtor's schedules or statement of financial affairs, this Disclosure Statement will govern and will, to the extent necessary, constitute an amendment to the affected schedules or statement of financial affairs.

    11.3   <u>Unauthorized Representations</u>.  Any representations or inducements made to secure acceptance other than as contained in this Disclosure Statement should not be relied upon arriving at a decision, and such representations and inducements should be reported to counsel for Debtor, who, in turn, shall deliver such information to the Court for appropriate action.

    11.4   <u>Disclaimer</u>.

    **NO REPRESENTATIONS CONCERNING DEBTOR OR THE PLAN ARE AUTHORIZED OTHER THAN AS SET FORTH HEREIN.  YOU SHOULD NOT**

RELY ON ANY REPRESENTATIONS OR INDUCEMENTS TO ACCEPT THE PLAN OTHER THAN THOSE CONTAINED HEREIN.

AN ACCOUNTANT HAS NOT REVIEWED OR APPROVED THE INFORMATION CONTAINED HEREIN. MUCH OF THE INFORMATION CONTAINED HEREIN WAS DERIVED FROM DEBTOR OR DEBTOR'S RECORDS AND HAS NOT BEEN VERIFIED FROM INDEPENDENT SOURCES. DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY ALTHOUGH ALL SUCH INFORMATION IS ACCURATE TO DEBTOR'S BEST KNOWLEDGE, INFORMATION, AND BELIEF.

THE COURT HAS NOT VERIFIED THE ACCURACY OF THE INFORMATION CONTAINED HEREIN. THE COURT'S APPROVAL OF THE DISCLOSURE STATEMENT DOES NOT IMPLY THAT THE COURT ENDORSES OR APPROVES THE PLAN, BUT ONLY THAT, IF THE INFORMATION IS ACCURATE, IT IS SUFFICIENT TO PROVIDE AN ADEQUATE BASIS FOR CREDITORS AND INTEREST HOLDERS TO MAKE INFORMED DECISIONS WHETHER TO APPROVE OR REJECT THE PLAN.

/// /// ///

/// /// ///

/// /// ///

Dated this 1st day of March 2017.

                         **DAVIS MILES, MCGUIRE GARDNER, PLLC**

                         */s/ Aubrey L. Thomas*
                         Pernell W. McGuire
                         Aubrey L. Thomas


                         */s/ Ken Olcher*
                         Managing Member, Tenkoris, LLC